U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JAN 0 4 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

SYLVESTER RENTHROPE

versus                                           CIVIL ACTION NO. 05-1390
                                                                          JUDGE TOM STAGG

JOHN TOFFTON, ET AL.

## MEMORANDUM RULING*

Before the court is a motion for summary judgment filed by six correctional officers, seeking dismissal of the plaintiff's claims against them. See Record Document 25. Sylvester Renthrope ("Renthrope"), pro se plaintiff in this action, alleges that his constitutional rights were violated in an incident that occurred on July 30, 2004, during his incarceration at the David Wade Correctional Center ("DWCC"). In particular, Renthrope contends that DWCC correctional officers used excessive force when subduing him after he refused to approach his cell bars for a routine shakedown. Renthrope further alleges that excessive force was used when he refused to strip down for a shower following his initial refusal to comply with the orders to approach his cell bars. The defendants are the DWCC

---

*This opinion is not intended for commercial print or electronic publication.

correctional officers allegedly involved in the incident, Captain John Toffton, Lieutenant Roderick Malcolm, Lieutenant Jeremy Wallace, Lieutenant Chris Evans, Sergeant (Lieutenant at the time of the incident) Christopher Hamilton and Lieutenant Curt Wainwright (hereinafter "defendants"). Based on the following, the defendants' motion for summary judgment is **GRANTED** and Renthrope's claims are **DISMISSED WITH PREJUDICE.**

## I. BACKGROUND

**A.  Undisputed Facts.**

It is appropriate to begin with a recitation of the pertinent facts that are undisputed. The sources of evidence upon which the court relies include affidavits submitted by the defendants and members of the DWCC medical staff, incident reports and medical reports prepared by DWCC in connection with the incident and Renthrope's allegations regarding his version of events.[1]

On the day in question (July 30, 2004), Lieutenant Wallace approached Renthrope's cell for a routine search and ordered Renthrope to approach the cell bars to be restrained. Renthrope informed Wallace that he was using the bathroom

---

[1] Other than his own allegations contained in the complaint regarding the manner in which the incidents occurred, Renthrope has offered no competent summary judgment evidence. In fact, he has failed to respond to the defendants' motion with any filing whatsoever.

and was constipated. Wallace notified Captain Toffton, who arrived at the cell and allowed Renthrope several more minutes to finish using the bathroom. Toffton then gave Renthrope several direct verbal orders to come to the cell bars to be restrained, but Renthrope refused, continuing to cite his need to go to the bathroom. Toffton then ordered the setup of a video camera and requested a can of Deep Freeze (mace). Renthrope was informed that if he did not come to the cell bars to be restrained, the chemical agent would be used. Again, Renthrope failed to comply, so Toffton sprayed mace to Renthrope's head area. After approximately five minutes passed (to allow the chemical agent to take effect), Toffton again gave Renthrope a direct verbal order to come to the bars to be restrained, which Renthrope again ignored. Toffton then sprayed another burst of mace to Renthrope's head area. Toffton also requested a pepper ball launcher.

After waiting for the chemical agent to take effect and while waiting for the pepper ball launcher to arrive, Toffton gave Renthrope several more direct orders to comply, notifying him that the pepper ball launcher would be used. These actions yielded no results. Renthrope attempted to barricade himself with his mattress. Toffton then discharged the pepper ball launcher towards Renthrope's legs. Renthrope pulled his legs up to block the launcher.

Toffton then ordered that cell entry equipment and an electronic capture shield

be brought to the cellblock. When the equipment arrived, Renthrope complied with the previous orders and came to the bars to be restrained. DWCC medical personnel immediately examined Renthrope.[2] Renthrope was then taken to another cellblock for a clean cell and a shower.[3]

Renthrope was placed in the shower and given several direct orders to strip down and pass his boxer shorts out of the shower. He removed his clothing but refused to provide his boxer shorts. Toffton then gave Renthrope an order to catch his knees to be properly restrained. Renthrope did not comply. As a result, Toffton ordered Wallace, Evans, Hamilton and Wainwright to enter the shower stall and restrain Renthrope.[4] Renthrope showered and was seen by a DWCC nurse. Two abrasions were noted to Renthrope's right knee.

As a result of these incidents, Renthrope was issued a disciplinary reports/rule violation report. Renthrope did not receive or require any further medical treatment related to these encounters.

---

[2] There were two areas on Renthrope's left leg where he had been hit by the pepper ball launcher. There was no swelling to the face or eyes from the mace but wet compresses were applied to both eyes to relieve the burning.

[3] During the search of Renthrope's cell, a large amount of deodorant, stamps and tobacco was recovered.

[4] After Renthrope was restrained and his boxer shorts were removed, a large amount of tobacco and several cigarette lighters were found.

4

B.  **Disputed Facts.**

The disputed facts concern the conduct of the respective parties during the course of the incident. Renthrope contends that he was unable to comply with orders to come to the cell bars to be restrained because of his constipation. Thus, he contends that the use of a chemical agent was unnecessary, since he was not disturbing anyone. Renthrope also contends that the defendants used excessive force while forcefully removing his boxer shorts, pushing him to the ground unnecessarily. He states that he could not remove his boxer shorts because of the presence of leg shackles, a fact which the defendants dispute.

Not surprisingly, the defendants contend that the incident occurred in a quite different manner: that entry of Renthrope's cell and use of a chemical agent was necessary because he ran to the toilet when he saw them coming and refused to approach the cell bars to be restrained as ordered, and that he refused to remove his boxer shorts when ordered even though there were no leg shackles (the defendants assert that the leg shackles were placed on Renthrope after the boxer shorts were removed).

## II. LAW AND ANALYSIS

A.  **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil

5

Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004) (citations and quotations omitted). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., Inc., 402 F.3d 536, 540 (5th Cir. 2005).

B.  **Renthrope's Failure To Respond To Defendants' Motion.**

The defendants served on Renthrope a copy of their Motion for Summary Judgment on July 26, 2002. To date, Renthrope has not responded. Local Rule

7.5W requires a respondent opposing a motion to "file a response, including opposing affidavits, memorandum, and such supporting documents as are then available, within 15 days of service of the motion." Clearly, Renthrope failed to oppose the motion for summary judgment within the required fifteen day period. Federal Rule of Civil Procedure 56 states the following:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Simply because Renthrope did not oppose the defendants' motion for summary judgment is an insufficient basis, standing alone, for a grant of summary judgment, since the defendants still must establish the absence of a genuine issue of material fact before they can prevail on a summary judgment motion. See Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985). However, as discussed below, the court finds it appropriate to enter summary judgment against Renthrope.

C. Analysis.

The Eighth Amendment prohibits the imposition of "cruel and unusual

punishments" upon persons convicted of crimes. After incarceration, cruel and unusual punishment is considered to be any "unnecessary and wanton infliction of pain." Ingraham v. Wright, 430 U.S. 651, 670, 97 S. Ct. 1401, 1412 (1977); Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976). The infliction of pain in the course of a prison security measure does not necessarily amount to cruel and unusual punishment because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable. See Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986). Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the determinative question is whether force was applied in a good faith effort to maintain and restore discipline, or maliciously and sadistically for the purpose of causing harm. See id. at 320-22, 106 S. Ct. at 1085; Hudson v. McMillian, 503 U.S. 1, 112 S. Ct. 995, 998-99 (1992). In determining whether the use of force was wanton and unnecessary, it is proper to consider the extent of injury suffered by the inmate, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7, 112 S. Ct. at 999.

In the day-to-day operation of prisons, it is not infrequent that guards will be

required to restrain recalcitrant or unruly inmates. In considering claims of excessive force, the court recognizes that the judgments of prison administrators in the adoption and execution of policies needed to preserve internal order, discipline and security are entitled to "wide-ranging deference." Bell v. Wolfish, 441 U.S. 520, 547, 99 S. Ct. 1861, 1878 (1979). This deference "requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." Whitley, 475 U.S. at 321, 106 S. Ct. at 1085. Furthermore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Hudson, 503 U.S. at 9, 112 S. Ct. at 1000. In addition, "[not] every malevolent touch by a prison guard gives rise to a federal cause of action." Id. Thus, the Eighth Amendment does not require the federal courts to conduct a full blown adjudication of every scuffle between inmates and guards. Absent a showing of conduct that is "repugnant to the conscience of mankind," id., or malicious and sadistic, Whitley v. Albers, supra, there is no constitutional violation. For summary judgment purposes, then, fact disputes regarding the manner in which a physical altercation between an inmate and guards commenced, or the precise nature of the physical contact between the inmate and the guards, are not *material* unless there is some indication that force was applied "maliciously and sadistically" for the purpose of causing harm.

In this case, the facts that are material to the claimed constitutional violation are undisputed, i.e., that Renthrope disregarded repeated orders to approach the cell bars, necessitating the use of a chemical agent and a pepper ball launcher; that when Renthrope saw the arrival of cell entry equipment and the electronic capture shield, he relented and approached the cell bars to be restrained; that any injuries Renthrope received during these incidents were minor in nature; and that the necessary medical treatment for those injuries was rendered immediately. Given these undisputed facts, any disagreement between the parties over whether the use of a chemical agent was necessary, or whether a particular push or shove by prison guards was provoked, does not raise issues of constitutional dimension.[5] Even accepting Renthrope's version of events, there is no basis for a rational trier of fact to conclude that the defendants used excessive force "maliciously and sadistically for the purpose of causing harm." Whitley, 475 U.S. at 319, 106 S. Ct. at 1084. The most that could be concluded, under Renthrope's version of events, is that the defendants reacted in an attempt to restore order and discipline. Such reactions do not rise to the level of a constitutional violation unless they involve "unnecessary and wanton infliction of pain." Ingraham v. Wright, 430 U.S. 651, 670, 97 S. Ct.

---

[5] In fact, the DWCC policy on the use of force was strictly observed.

1401, 1412 (1977). That standard is not satisfied in this case, and the factual disputes which do exist are not material to the question of whether a constitutional violation occurred. Accordingly, the defendants are entitled to summary judgment on the ground that Renthrope's own version of the events does not state a prima facie case for a constitutional violation based on excessive force.[6]

Accordingly, the defendants' motion for summary judgment is **GRANTED**; and Renthrope's action is **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, on this the 4th day of January, 2007.

JUDGE TOM STAGG

---

[6] In considering the absence of any evidence of a lasting injury, the court is aware that Renthrope is not required to prove that he suffered a significant injury in order to establish a constitutional violation. See Hudson v. McMillian, 503 U.S. 1, 112 S. Ct. 995 (1992). Nevertheless, the absence of any sign of injury other than a minor cut is one of several factors in this case which belies any inference that the defendants engaged in malicious or sadistic conduct.